1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ALLEN HAMMLER,

              Plaintiff,

     v.

J. HERNANDEZ,

              Defendant.

Case No. 1:19-cv-00616 SKO (PC)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR TERMINATING SANCTIONS FOR WILLFUL FAILURE TO PARTICIPATE IN DEPOSITION**

(Doc. 64)

## I.     RELEVANT PROCEDURAL HISTORY

This Court issued a Discovery and Scheduling Order on November 2, 2022. (Doc. 57.) On March 24, 2023, the Court issued its Order Granting Defendant's Motion for Extension of Time to Depose Plaintiff and to File Dispositive Motion. (Doc. 60.)  The discovery cut off deadline was extended from April 2, 2023 to June 5, 2023, to allow for Plaintiff's deposition to be rescheduled. The dispositive motion deadline was also extended from June 5, 2023 to August 4, 2023, to allow for the completion of Plaintiff's deposition and evaluation and drafting of any pre-trial dispositive motion. (*Id*. at 2.)

On May 31, 2023, Defendant Hernandez filed a motion for terminating sanctions for Plaintiff's willful failure to participate in a deposition. (*See* Doc. 64.)  More than 21 days passed without Plaintiff having filed an opposition or statement of non-opposition to Defendant's

1   motion. The Court issued an Order To Show Cause Why Action Should Not Be Dismissed For

2   Failure To Obey Court Orders. (Doc. 65.)

3          On July 6, 2023, Plaintiff filed a motion for a 30-day extension of time. (Doc. 66.)

4          On July 7, 2023, the Court issued its Order Discharging Order To Show Cause and Order

5   Partially Granting Extension Of Time Within Which To File Opposition To Motion For

6   Terminating Sanctions. (Doc. 67.) Plaintiff was granted an extension of 21 days from the date of

7   service within which to file his opposition to Defendant's motion. (*Id*. at 2.)[1]

8          On August 3, 2023, Plaintiff filed an opposition to the motion for terminating sanctions

9   (Doc. 71) and Defendant filed a reply on August 17, 2023 (Doc. 71). Plaintiff filed a "Motion to

10  File Sur-Reply" (Doc. 72) which was denied by the Court (Doc. 73).

11     **II.     DISCUSSION**

12          **A. The Parties' Positions**

13             1.  Defendant's Motion

14          Defendant moves for terminating sanctions for Plaintiff's willful failure to participate in

15  his deposition. (Doc. 64.) The motion includes the declaration of Ari J. Sheps and exhibits. (Doc.

16  64-2) Defendant also filed a 314-page Request for Judicial Notice. (Doc. 64-1.)

17          Defendant contends Plaintiff's refusals to be deposed on January 9, 2023, and April 18,

18  2023, were not outside his control and were therefore willful. (Doc. 64 at 14.) When Plaintiff

19  refused to participate due to "technical issues with obtaining video," institutional "staff were still

20  working on fixing the issue so that a video connection would be established." (*Id*. at 15.) Had the

21  video issues persisted, defense counsel was willing to conduct the deposition "by means of audio

22  alone." (*Id*.) Defendant contends Plaintiff is "an experienced litigant who has filed dozens of

23  lawsuits" and "has been admonished by multiple courts that he must attend and participate in

24  properly noticed depositions." (*Id*.) Defendant asserts Plaintiff's conduct at the January 2023 and

25  April 2023 depositions "is consistent with a pattern of abusive litigation tactics in which Plaintiff

26  regularly engages." (*Id*.) These tactics include claims of chest pain and suicidal ideation. (*Id*. at

27

28  [1] The Court's July 7, 2023, order was returned by the United States Postal Service marked "Undeliverable, Refused." (*See* Docket Entry dated 7/25/23.)

15-16.)

Defendant further contends Plaintiff "has directly stated that he will not allow Defendant another opportunity to depose him" and that if this Court were to order his deposition, he is "'not going to do it and [he's] going to basically come up with some kind of way to oppose it and make this judge looked biased.'" (Doc. 64 at 16.) Defendant contends the public's interest in the expeditious resolution of cases and the court's need to manage its docket weigh in favor of dismissal. (*Id*. at 16-17.) Defendant states he is severely prejudiced by Plaintiff's refusal to attend the properly noticed deposition (*id*. at 17-18), the public policy favoring resolution on the merits does not weigh in favor of a litigant who hinders a defense on the merits (*id*. at 18-19), and there are no available lesser alternative sanctions (*id*. at 19-20). Defendant asks this Court to compel Plaintiff "to sit for what will be Defendant's third attempt to depose Plaintiff" if the motion for terminating sanctions is not granted. (Doc. 64 at 20-21.)

In his supporting declaration, defense counsel states that on April 18, 2023, at 9 a.m., the institution was unable to establish a video connection for the Zoom deposition. (Doc. 64-2, ¶ 2.) At 9:05 a.m., counsel could hear Plaintiff "yelling in an aggressive tone in the background." (*Id*.) Counsel was advised by a correctional officer the computer would be restarted and they would try again. (*Id*.) Shortly after 9:30 a.m., the officer called defense counsel and informed him Plaintiff stated he was having chest pains and was being evaluated by medical staff. (*Id*.) Defense counsel asked the officer to call back after the medical examination. (*Id*.) After approximately thirty minutes, the officer informed counsel that Plaintiff demanded to be returned to his cell, had declared himself suicidal, and was currently in his cell being observed by staff. (*Id*.) Counsel terminated the deposition (*id*.) and arranged for an in-person deposition on May 17 and 18, 2023, allowing for the two-and-a-half-hour time limit for in-person depositions at the institution. (*id*., ¶ 3). Counsel also scheduled a phone call with Plaintiff to "discuss the previous deposition attempts" and obtain Plaintiff's cooperation. (*Id*.)

During an April 26, 2023, telephone call, Plaintiff was hostile and stated "'I know who you are, what do you want'" when counsel identified himself. (*Id*., ¶ 4.) When counsel advised Plaintiff that he wanted to talk about the deposition and before counsel could identify the date,

Plaintiff stated "in a very loud and angry voice said 'I know the date! It's not my responsibility to hang around and wait, it's only my responsibility to show up! So I'll ask again what the hell do you want?'" (*Id*., ¶ 5.) After asking Plaintiff to treat him with respect, Plaintiff replied "in a louder and angry tone 'I am speaking to you with respect! But I can say whatever the hell I want! As long as I'm not naming you. So why did you want this phone call?'" (*Id*., ¶ 6.) When defense counsel responded "'Well I wanted to talk to you about how we should proceed, because I know you've dealt with this issue in your other cases," Plaintiff interrupted stating "'Take it up with the court Sheps, I don't have time for you,'" ending the call. (*Id*., ¶ 7.) Because the phone call lasted less than two minutes, defense counsel was unable to inform Plaintiff of the scheduled in-person deposition or to discuss his willingness to participate in the deposition before filing the instant motion. (*Id*., ¶¶ 8-9.) Counsel states given "Plaintiff's attitude and hostility, it became clear that [Plaintiff] would not willingly cooperate in a third deposition attempt" and therefore counsel asked the litigation coordinator to cancel the in-person deposition. (*Id*., ¶ 10.)

Defense counsel states he received an unexpected call from Plaintiff on May 17, 2023, at 2:43 p.m. (Doc. 64-2, ¶ 11.) "Plaintiff was markedly more respectful and courteous" and they had a productive discussion regarding defense counsel's intention to continue using audio for the deposition if a video connection could not be established. (*Id*.) Plaintiff advised defense counsel he "would not have allowed an audio only deposition" to take place. (*Id*.) Defense counsel notes Plaintiff mentioned his alleged chest pains during the last deposition but did not mention suicidal ideation. (*Id*.) During the conversation Plaintiff advised defense counsel that the discovery requests Plaintiff served on April 26, 2023, were no longer needed because Plaintiff would be filing a motion for summary judgment "later that evening." (*Id*., ¶ 13.) Defense counsel states that given Plaintiff's demeanor during the telephone conversation, he "made the mental decision to file the instant motion as a Motion to Compel, rather than a Motion for Terminating Sanctions." (*Id*., ¶ 14.)

When Plaintiff asked defense counsel his intention regarding Plaintiff's deposition given the looming discovery deadline, defense counsel advised he would be filing a motion to compel Plaintiff's deposition. (*Id*., ¶ 15.) Plaintiff "replied to the effect of 'If the judge says I have to let

you depose me I will not comply.'" (*Id*., ¶ 16.) When defense counsel asked Plaintiff "to confirm that if the court were [to] grant Defendant's motion to compel he would not comply, Plaintiff replied verbatim 'If the judge says that I have to let you guys depose me, I'm not going to do it and I'm going to basically come up with some way to oppose it and make this judge look biased.'" (*Id*., ¶ 17.) Plaintiff stated the Court's previous rulings were improper and biased against him. (*Id*.) Counsel and Plaintiff discussed "various topics, including the case history, previous deposition attempts in this matter, and Plaintiff's frustrations with certain CDCR staff members." (*Id*., ¶ 18.)

Defense counsel stated he has reviewed Plaintiff's litigation history that reveals Plaintiff is listed in "sixty-six District Courts dockets and twenty-four Ninth Circuit Court of Appeals dockets," although some are duplicative. (Doc. 64-2, ¶ 19.) Defense counsel attached six exhibits in support of his declaration, including notices regarding the January 9 and April 18, 2023 depositions, transcripts and statements of non-appearance, a copy of a letter counsel received from Plaintiff following the April 26, 2023 telephone call, and a copy of a CDCR 128B General Chrono form dated April 18, 2023, that he received from the litigation coordinator at Plaintiff's institution. (*Id*., ¶¶ 20-25; Doc. 64 at 22-52.)

### 2.  Plaintiff's Opposition

Plaintiff filed an opposition to Defendant's motion (*see* Doc. 70 at 3-20) that includes numerous exhibits[2] (*id*. at 21-48). Plaintiff contends the only relevant events concern the April 18, 2023 deposition. (Doc. 70 at 3.) He contends defense counsel blames him for "systemic failures of technology and or the ignorance of correctional staff." (*Id*. at 4.) Plaintiff asserts defense counsel "acted to factually lie to this Court" regarding the events of April 18, 2023, because body camera footage "of at least six correctional officers" will show a supervising lieutenant directing Correctional Officers Sanchez and Phillips "to stop trying to connect to the Zoom link" after 45 minutes. (*Id*.) Plaintiff contends defense counsel "refused to speak with Plaintiff" that morning, citing to Sanchez's body camera. (*Id*. at 5.) He contends defense counsel directed Sanchez to

---

[2] The Court has reviewed the exhibits containing copies of documents related to the rules violation report, grievances, and requests for interviews.

"keep Plaintiff there in the holding cage" and that he (Plaintiff) informed Sanchez that defense counsel "had no authority to order C/Os to 'hold' him anywhere," and stating Sanchez and defense counsel argued as a result. (*Id*.) Plaintiff contends he told Sanchez he wanted to leave but Sanchez ignored him. (*Id*.)  When Plaintiff advised Phillips that "he'd be suing them for false imprisonment," Sanchez asked if Plaintiff was refusing. (*Id*.) Plaintiff noticed "the entrapment in the question that if answered yes to would allow him to be said to have willfully obstructed the deposition, rather than the technical troubles being rightfully acknowledged." (*Id*. at 5-6.) When asked again if he was refusing, Plaintiff said, "'No, y'all aint gonna blame me, and tell the judge I refused because you too dumb to work the system.'" (*Id*. at 6.) Plaintiff contends he was left in a holding cage for about five minutes before "becoming upset "at the sound of the C/Os in the hallway acting as if it were a social hour." (*Id*.) He called them but they "ignored him" so he" began kicking the cage door" to get their attention. (*Id*. at 7.) While doing so, he began to experience chest pains from a pre-existing heart condition. When a correctional officer and Sergeant Baker approached to advise he would be returned to his cell, Plaintiff complained of the chest pains, "explaining it was a result of his having to kick the cage to get their attention." (*Id*.) Plaintiff asserts that when Correctional Officer Pohovich arrived in response to emergency protocols initiated by Sergeant Baker, Pohovich "began to taunt Plaintiff as she had been doing all morning, prior to that instance, and acts to do in any instance she can gain opportunity to interact with Plaintiff." (*Id*. at 7-8.) Plaintiff admits to "calling Pohovich a 'stinking pussy bitch,' but alleges that this did not happen at a time where the deposition was taking place." (*Id*. at 8.) Plaintiff contends the rules violation report issued to Plaintiff from Pohovich concerns an earlier comment rather than the "'stinking…'" comment he made at 10:30 a.m. (*Id*.)

Plaintiff states it is not the "Court's place to discipline prisoners for their alleged bad conduct, no matter how much it finds the behavior deplorable" where the conduct did not occur during "events related to the Court's business." (Doc. 70 at 9.) Plaintiff states he and Pohovich "had been reproaching each other all morning and Plaintiff had been calling her 'stinking …' all morning," but she only issued the rules violation report "for him stating 'get off my door dumb bitch.'" (*Id*.) He contends there is body camera footage to support his assertion "of that selective

1   enforcement" and Phillip's "false declaration." (*Id*.) Plaintiff contends "Phillip's claims Pohovich

2   made the radio call where Baker did, he claims language like 'please' was used but [body

3   cameras] proves he lied." (*Id*. at 10.) Plaintiff states he was inside his cell when he reported he

4   was suicidal and "at the point in time that Plaintiff reported chest pains the proceedings related to

5   the deposition had concluded." (*Id*.) When Plaintiff "reported suicidal" the deposition had already

6   concluded. (*Id*. at 10-11.) Plaintiff contends defense counsel is "bootstrapping" by seeking to

7   "have the Court deviate" from letting prison officials handle internal matters. (*Id*. at 11.) Plaintiff

8   alleges that despite "Dr. Wilson's alleging Plaintiff had falsely reported [suicidal ideation], over

9   30 times" in 2023, Plaintiff "has not been issued 30 RVRs," nor one on April 18, 2023. (*Id*. at

10  12.) He contends this "Court must assume that Plaintiff had not violated" a regulation if the

11  absence of an RVR. (*Id*.)

12         Plaintiff alleges defense counsel seeks to have matters "unrelated to his deposition

13  dovetailed thereto" to "render Plaintiff amenable to termination sanction, and that's only if he is

14  found to have acted to obstruct the proceeding. Plaintiff did not." (Doc. 70 at 13.) Plaintiff

15  contends defense counsel is lying to the Court by asserting he arranged for an in-person

16  deposition on May 17 and 18, 2023, because it was a scheduled "visit" not a deposition. (*Id*. at

17  13-14.) Plaintiff contends in-person depositions are conducted in committee rooms not in visiting

18  rooms. (*Id*. at 14.) Without referencing any date, Plaintiff asserts he was taken to the visiting

19  rooms and was "informed that it was 'only a visit'" and that defense counsel "was to be visiting."

20  (*Id*.) Plaintiff notes the correctional officer referred to defense counsel "'Ari' as 'she,'" telling

21  Plaintiff "who had been waiting for Sheps for over 20 minutes 'she's running late,' etc." (*Id*.) Ten

22  to fifteen minutes later, Plaintiff was advised defense counsel had "cancelled and rescheduled for

23  'tomorrow.'" (*Id*.) Plaintiff immediately called defense and asked what defense counsel wanted,

24  "hoping to prevent Sheps from lying about some not yet known reason for the visit where

25  Plaintiff had in a letter told Sheps not to call him, but knowing he had to confer." (*Id*. at 15.)

26  Plaintiff contends defense counsel gave no reason for cancelling the May 17, 2023, deposition.

27  (*Id.* at 16.) Plaintiff told defense counsel that if counsel "blamed him for the failings of C/Os to

28  operate Zoom" on April 18, 2023, "he'd have to deal with the consiquences [sic]" because the

1    reason the deposition did not proceed was due to "technical errors." (*Id*.) Plaintiff also contends

2    defense counsel "has not shown any prejudice to the would-be defenses," and that he would have

3    participated but defense counsel "failed to ensure that the video set-up(s) on past dates were

4    troubleshot ahead of time as is obviously needed, but he has neglected to do so anticipating issues

5    occurring that he could call found and garner a win thereby, where he knows he can't win in trial

6    due to the state of the evidence already known to him." (*Id*. at 18-19.)

7         Finally, Plaintiff asks the Court to order defense counsel to provide the Court with the

8    video and audio recordings for the events of April 18, 2023, "as it can be seen and heard that the

9    Lt. had concluded the deposition prior to Plaintiff's reporting chest pains or other, and the

10   conclusion was not a result of Plaintiff's actions but a direct and proximate result of technical

11   troubles, and C/O(s) ignorant to working the equipment." (*Id*. at 19-20.) Plaintiff requests that

12   Defendant's motion be denied because defense counsel did not provide "video/audio readily

13   available" that would refute Defendant's claims in the motion, forcing this Court to "enter a

14   determination of his credibility against Plaintiff's in hope that the Court will believe his lies, but

15   all that would do is parlay this into another state lawsuit against Shep's Office and C/O Phillips

16   for slander/libel, and abuse of process." (*Id*. at 20.)

17                              3.   Defendant's Reply

18        Defendant contends Plaintiff acknowledges he acted disorderly at the deposition, "and

19   provides even more information regarding his disorderly conduct of which Defendant was not

20   previously aware." (Doc. 71 at 1.) Defendant notes "aggressive conduct is not permitted for

21   inmates, and while Plaintiff attempts to frame it as reasonable, repeatedly kicking a door is not

22   only not acceptable, routine, or tolerable heavier in prison, it is also unacceptable behavior

23   outside of prison and would not be tolerated in any deposition." (*Id*. at 2.)

24        Defendant asserts that had Plaintiff remained without kicking, yelling and using foul

25   language, "and repeating his pattern of making false health claims," and had staff not been

26   focused on Plaintiff's conduct to the detriment of fixing the technical issues, "no terminating

27   sanctions would be sought." (Doc. 71 at 2.) Defendant notes the technical issues may have been

28   resolved on April 18, 2023, but "we will never know, because Plaintiff's aggressive and hostile

8

conduct prevented officers from working on the problem." (*Id*.) Moreover, Defendant contends Plaintiff directly stated he would not comply with a court order compelling his deposition and that Plaintiff has not denied making that statement, justifying the sanction sought. (*Id*.)

Defendant acknowledges technical difficulties happen, but notes that had Plaintiff remained calm and waited appropriately for either a solution to the difficulties or for the staff to determine a solution was not possible, "the deposition may have went forward. Instead, after only a brief period of time, Plaintiff lashed out and became hostile as he has a noticed tendency (reinforced by his own evidence) to do." (Doc. 71 at 3.) Defendant notes lesser sanctions are not available and requests this Court impose terminating sanctions "as they are appropriate and justified." (*Id*.)

In a supporting declaration, defense counsel states he received an unexpected call from Plaintiff on June 5, 2023. (Doc. 71-1, ¶ 2.) Plaintiff asked defense counsel whether he would be filing a motion for extension of time, a motion to compel, or a motion for terminating sanction as discussed in a previous phone call. (*Id*., ¶ 7.)[3] When defense counsel stated he had filed a motion for terminating sanctions on May 30, 2023, Plaintiff "began a long tirade regarding why such a Motion would be a mistake stating that he had interviewed Officers on their body cameras regarding the incident" and advising defense counsel that he "should recant the motion" and informing counsel that if counsel did not do so Plaintiff may bring a lawsuit against him. (*Id*., ¶ 9.) Plaintiff stated that "he was working with Officers on drafting 128B chronos which would prove that the disruption and disorder wasn't his fault, but that he was brought back to his cell after Officers got frustrated with the technical difficulties." (*Id*., ¶ 10.)

### 4. Defendant's Request for Judicial Notice

Defendant asks this Court to take judicial notice of the following:

1. In *Hammler v. Hernandez*, No. 3:18-cv-00259-CAB-MDD, an action filed in the United States District Court for the Southern District of California:

   a. A report and recommendation issued November 17, 2020, to grant defendant's motion for terminating sanctions and dismiss the action due to Plaintiff's

---

[3] The Court notes the declaration is misnumbered, missing numbered paragraph entries five and six.

failure to participate in his deposition and to comply with court orders (Exhibit 1);

    b.  The order adopting the report and recommendation, granting terminating sanctions and dismissing the action with prejudice, issued December 21, 2020 (Exhibit 2);

    c.  The defendants' motion for terminating sanctions filed October 23, 2020 (Exhibit 7);

2.  In *Hammler v. Franklin*, No. 2:18-cv-05525-JGB-SP, an action filed in the United States District Court for the Central District of California:

    a.  An order issued September 9, 2021, finding Plaintiff "impeded, delayed and frustrated his deposition in several ways," and granting defendant's request for the imposition of sanctions (Exhibit 3);

    b.  A report and recommendation issued September 29, 2022, to grant defendant's motion for terminating sanctions and to dismiss the action due to Plaintiff's failure to comply with the court's order to cooperate with his deposition (Exhibit 4);

    c.  The order adopting the report and recommendation, granting the motion for terminating sanctions and dismissing the action with prejudice, issued January 18, 2023 (Exhibit 5);

    d.  An order granting defendant's motion to compel Plaintiff's deposition testimony and denying sanctions, issued September 9, 2021 (Exhibit 8);

    e.  A transcript of Plaintiff's March 26, 2021 deposition and the Declaration of Deputy Attorney General Thai regarding the deposition, filed April 21, 2021 (Exhibit 9);

3.  In *Hammler v. Wright*, No. 2:15-cv-01645-TLN-EFB, an action filed in the United States District Court for the Eastern District of California, Sacramento Division:

    a.  An order dismissing the action with prejudice for Plaintiff's refusal to board the transport van to his trial, and failure to comply with court orders, issued

1    February 21, 2020 (Exhibit 6).

2    (Doc. 64-1 at 1-3.)

3        The Court takes judicial notice of the court records noted above. Fed. R. Evid. 201(b);

4    *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980) (recognizing that under Federal Rule of

5    Evidence 201, "a court may take judicial notice of its own records in other cases"); *Bias v.*

6    *Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (Courts "may take notice of proceedings in other

7    courts, both within and without the federal judicial system, if those proceedings have a direct

8    relation to matters at issue").

9                    **B.  Applicable Legal Standards**

10       On motion, the Court may order sanctions against a party for failure, after being served

11   with proper notice, to appear for that person's deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Such

12   sanctions may include prohibiting the disobedient party from supporting or opposing designated

13   claims or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P.

14   37(b)(2)(A). The Court also may dismiss the action or proceeding in whole or in part. *Id.*

15   Dismissal and default are such drastic remedies, they may be ordered only in extreme

16   circumstances—i.e., willful disobedience or bad faith. *In re Exxon Valdez*, 102 F.3d 429, 432 (9th

17   Cir. 1996). Even a single willful violation may suffice depending on the circumstances. *Valley*

18   *Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) (dishonest concealment of

19   critical evidence justified dismissal).

20       The court may consider a party's pro se status in evaluating the willfulness of discovery

21   violations and in weighing the other factors regarding dismissal, but lack of a lawyer does not

22   excuse intentional noncompliance with discovery rules and court orders. *See Castillo v. Johnson*,

23   2021 WL 2165204, at *4 (C.D. Cal. May 25, 2021), adopted, 2021 WL 2165206 (C.D. Cal. May

24   26, 2021); *Dettmanti v. Davies*, No. CV 13-3484-MWF (JPR), 2016 WL 649530 at *3 (C.D. Cal.

25   Sept. 28, 2016) (citing *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000)) (affirming

26   sanction of dismissal and holding that "[a] pro se litigant is bound by the litigation rules as is a

27   lawyer, particularly here with the fulfilling of simple requirements of discovery"); *Gordon v.*

28   *Cnty. Of Alameda*, No. CV-06-02997-SBA, 2007 WL 1750207 at *5 (N.D. Cal. June 15, 2007)

1  ("pro se plaintiffs must abide by the rules of discovery, and when they fail to do so in bad faith

2  dismissal is warranted").  District courts also have the inherent power to control their dockets and

3  "[i]n the exercise of that power they may impose sanctions including, where appropriate, ...

4  dismissal." *Thompson v. Housing Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).

5          The Ninth Circuit has identified five factors that a court must consider before imposing

6  the sanction of dismissal: "(1) the public's interest in the expeditious resolution of litigation; (2)

7  the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public

8  policy favoring disposition of cases on their merits; and (5) the availability of less drastic

9  sanctions." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). The Ninth Circuit has

10  stated that when considering "case-dispositive sanctions, the most critical factor is not merely

11  delay or docket management concerns, but truth...[and] regarding risk of prejudice and of less

12  drastic sanctions...whether the discovery violations 'threaten to interfere with the rightful decision

13  of the case.'" *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th

14  Cir. 2007) (quoting *Valley Eng'rs v. Electric Eng'g Co*., 158 F.3d 1051, 1057 (9th Cir.1998); *see*

15  *also Wanderer v. Johnston*, 910 F2d 652, 656 (9th Cir. 1990) (the amount of prejudice resulting

16  from the discovery violations and the availability of less drastic sanctions are said to be "key

17  factors"). "A terminating sanction, whether default judgment against a defendant or dismissal of a

18  plaintiff's action, is very severe," and "[o]nly willfulness, bad faith, and fault justify terminating

19  sanctions." *Conn. Gen. Life Ins*., 482 F.3d at 1096.

20              **C.  Analysis**

21          Defendant contends this action should be terminated for Plaintiff's repeated failures to

22  comply with discovery obligations and to litigate in good faith (Doc. 64 at 14), and that all

23  applicable factors weigh in favor of dismissal (*Id*. at 16-20). Although Plaintiff's conduct was

24  willful, all applicable factors do not weigh in favor of dismissal.

25              1.  Willfulness Finding

26          The January 9, 2023, and the April 18, 2023 depositions were properly noticed. (*See* Doc.

27  64 at 28-30 [1/9/23] & 33-37 [4/18/23].) The January 9, 2023 deposition notice, originally served

28  by mail on November 15, 2022, was returned to the Attorney General's Office marked "'RTS IM

1    Refused'" on November 30, 2022. (*See* Doc. 64 at 27.) The notice was re-served to Plaintiff on

2    December 5, 2022. (Doc. 64 at 27, 31.)

3          On January 9, 2023, Plaintiff was to appear at his deposition scheduled for 8 a.m. (*See*

4    Doc. 64 at 28-30.) At 8:32 a.m., defense counsel Anthony Corso canceled the deposition and

5    made a record of Plaintiff's non-appearance. (*Id*. at 23-25.) After experiencing technical

6    difficulties with video, an officer advised defense counsel that Plaintiff "was refusing to appear

7    and the officer provided a recording to the court reporter." (*Id*. at 24-25.) Officer Ehlers at

8    California State Prison, Sacramento noted that while staff was trying to connect for the video

9    deposition, Plaintiff "'lost his patience and decided to return to his cell.'" (*Id*. at 25.)

10         On April 18, 2023, Plaintiff was to appear at his deposition scheduled for 9 a.m. (*See* Doc.

11   64 at 33-36.) The transcript for the statement of non-appearance notes the court reporter and

12   defense counsel Ari J. Sheps and Sarah Singer were present between 8:55 a.m. and 10:18 a.m. via

13   Zoom. (*Id*. at 42-43.) Mr. Sheps noted he was informed by correctional staff that Plaintiff "was

14   initially present for his deposition," but difficulties arose establishing a video connection,

15   although an audio connection was established. (*Id*. at 43-44.) Defense counsel noted he was

16   prepared to conduct the deposition by audio but was unable to offer that alternative because

17   Plaintiff became "frustrated and has decided to leave the room." (*Id*. at 44.)

18         Defense counsel asked Correctional Officer Phillips for his account of the events. (*Id*.)

19   C/O Phillips stated Plaintiff "was agitated" and was asked to "please be patient for just a couple

20   of minutes while" staff tried to establish the connection. (*Id*.) Plaintiff then stated he "had chest

21   pains." (*Id*.) A treatment triage nurse responded, "cleared him, and on the way back to his

22   housing he claimed he was suicidal." (*Id*.) Phillips advised that a mental health doctor would be

23   responding, and that Plaintiff was being observed in his cell. (*Id*.) Defense counsel asked Phillips

24   what Plaintiff's demeanor was like prior to leaving the room and Phillips stated Plaintiff "was

25   agitated, yelling obscenities at female officers and myself. I can't go into detail exactly what he

26   was saying, yeah. Unpleasant." (*Id*. at 44-45.) Defense counsel noted this was the second attempt

27   to take Plaintiff's deposition, the second time video connection difficulties arose, and the second

28   time Plaintiff left the deposition. (*Id*. at 45.)

After the unsuccessful second deposition attempt, defense counsel scheduled an in-person deposition to be held May 17, 2023, and May 18, 2023, at Plaintiff's institution. (Doc. 64-2, ¶ 3.) However, following a telephone conversation in late April between defense counsel and Plaintiff, and a letter from Plaintiff received by defense counsel on May 1, 2023, the in-person deposition planned for mid-May was cancelled because Plaintiff was hostile and unwilling to cooperate. (Doc. 64 at 8-9.) During a telephone call on May 17, 2023, Plaintiff advised defense counsel that even if the Court ordered Plaintiff to be deposed, he would not comply with the Court's order. Plaintiff stated he was "'not going to do it'" and that he was "'going to basically come up with some kind of way to oppose it and make this judge look biased.'" (*Id.* at 9.)

"Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003). Here, Plaintiff's disobedient conduct was within his control.

The Court finds Plaintiff acted willfully. While the record demonstrates technical issues concerning a video connection during the second attempt to take Plaintiff's deposition, Plaintiff's actions—unrelated to the technical issues—were problematic. Plaintiff was disrespectful to correctional staff, used derogatory and profane language, raised his voice in anger, and displayed aggressive behavior by kicking the holding cage. Plaintiff also manipulated and obstructed efforts to take his deposition by claiming he was suffering from chest pains, and later claiming to be suicidal. The Court notes Plaintiff has a documented history of claiming suicidal ideation to avoid various circumstances and obligations, including having his deposition taken and recanting his claim. (*See* Doc. 64-1 at 36-37.)

### 2. Consideration of Factors Warranting Dismissal

Finding Plaintiff's behavior willful, the Court considers whether dismissal is an appropriate sanction.

First, the Court considers the public's interest in the expeditious resolution of this litigation. The Ninth Circuit has explained that "[t]he public's interest in expeditious resolution of litigation always favors dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). This case has been pending since May 2019, proceeding on a single First Amendment claim

against Defendant Hernandez. The Court issued its Discovery and Scheduling order in November 2022. Defendant has attempted to take Plaintiff's deposition on two occasions without success, due in part to technological issues and also due to Plaintiff's behavior. Defendant is entitled to examine Plaintiff regarding the facts on which Plaintiff bases his claims. Here, the public's interest in the expeditious resolution of this litigation weighs in favor of dismissal.

Second, the Court considers the need to manage its docket. This factor focuses on whether a particular case has "consumed large amounts of [a district] court's valuable time that it could have devoted to other major and serious criminal and civil cases on its docket." *See Ferdik v. Bonzelet*, 963 F.2d 1261 (9th Cir. 1992). This action has been pending for more than four years. Following screening and service of the operative complaint, the Court denied Plaintiff's motion for injunctive relief (Docs. 47 & 53) and motion for summary judgment (Doc. 56). Discovery commenced more than eleven months ago (Doc. 57), and the deadline for the completion of discovery was extended to accommodate Defendant's need to depose Plaintiff after the January 2023 attempt to depose him was unsuccessful (Doc. 60). Plaintiff's unacceptable conduct continues to require the Court to expend its limited resources to address this matter. Thus, the factor also weighs in favor of dismissal.

Third, the Court considers the risk of prejudice to the Defendant. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting *Adriana Int'l Corp. v. Thoerren*, 913 F.2d 1406, 1412 (9th Cir. 1990)). Here, Plaintiff's actions continue to impair Defendant's ability to obtain information regarding the circumstances of his claim and the damages he is claiming. Plaintiff's willful refusal to participate in a deposition also continues to delay the trial in this case. Thus, this factor too weighs in favor of dismissal.

Fourth, the Court considers the public policy favoring disposition of this action on its merits. This factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits

15

1    but whose conduct impedes progress in that direction." *In re PPA*, 460 F.3d at 1228. Here,

2    Plaintiff's behavior, exhibited in the January and April 2023 deposition efforts, impedes progress

3    in this action. This factor weighs in favor of dismissal.

4          Finally, the Court considers the availability of less drastic sanctions. A district court must

5    consider the impact of a sanction and whether a less severe sanction would adequately address a

6    party's failure to engage in the discovery process. *Malone v. U.S. Postal Serv.*, 833 F.2d 128,

7    131-32 (9th Cir. 1987). And as noted above, when "deciding whether to impose case-dispositive

8    sanctions, the most critical factor is not merely delay or docket management concerns, but truth.

9    What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic

10   sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the

11   case." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (quotation marks omitted). The Ninth Circuit

12   stated this factor includes three subparts, including "whether the court has considered lesser

13   sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility

14   of case-dispositive sanctions." *Id.* at 1096.

15         The Court finds a less drastic sanction is available. Here, the Court has issued a Discovery

16   and Scheduling Order addressing Plaintiff's required participation in a properly noticed

17   deposition (*see* Doc. 57 at 2). However, Defendant has not sought an order compelling Plaintiff to

18   participate in a deposition, and the Court has not ordered him to attend a deposition following

19   issuance of the Discovery and Scheduling Order. Because compelling Plaintiff's deposition

20   amounts to a less drastic sanction and this Court has not warned Plaintiff about the possibility of

21   case-dispositive sanctions, the Court will order Plaintiff to participate in a deposition to be

22   scheduled by Defendant. [4]

23         The Court will afford Plaintiff ***one final opportunity*** to meet his discovery obligation. The

24   Court will direct Plaintiff to participate in a deposition within a certain time and will direct

25   Plaintiff shall avoid disruptive, disrespectful or assaultive behavior, and the use of any profane

26   language. *See, e.g.*, *Glas-Weld Sys., Inc. v. Boyle*, No. 6:12-CV-02273-AA, 2013 WL 4828965, at

27   

28   

---

[4] The Court finds evidentiary sanctions would be ineffective as Plaintiff would be able to testify to information he has not provided at the deposition. Monetary sanctions are also ineffective because Plaintiff is proceeding *in forma pauperis* and would likely be unable to pay any monetary sanctions.

*1 (D. Or., Sept. 6, 2013) (admonishing a pro se defendant that further profanity, threats, and taunts may result in additional sanctions); *Scott v. Palmer*, No. 1:09-CV-01329-LJO-SKO (PC), 2014 WL 6685813, at *3 (E.D. Cal., Nov. 26, 2014) (admonishing a state prisoner proceeding pro se that use of profanity, abusive conduct, and uncooperativeness at a deposition is grounds for terminating sanctions and advising him pro se status does not "shield him from the consequences of abusive behavior"); *Block v. Snohomish Cty*, No. C14-235RAJ, 2014 WL 6750475, at *10 (W.D. Wash., Dec. 1, 2014) (admonishing a plaintiff that the court will impose monetary sanctions if she uses "profanity or abusive invective" in communications with defense counsel); *Bledsoe v. Martinez*, No. 2:18-cv-2710 JAM KJN P, 2021 WL 463598, at *6 (E.D. Cal. Feb. 9, 2021) (denying defendant's motion for terminating sanctions, ordering pro se plaintiff to attend his deposition, and admonishing plaintiff that "he cannot demand defense counsel produce documents or witnesses, nonparty or otherwise, at plaintiff's deposition").

III.   **CONCLUSION AND ORDER**

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for terminating sanctions (Doc. 64) is **DENIED** in **PART** and **GRANTED** in **PART**;

2. Defendant's motion for terminating sanctions in the form of dismissal of this action is **DENIED**;

3. Defendant's request the Court order Plaintiff to participate in a deposition is **GRANTED**. Plaintiff **SHALL** participate in a properly noticed deposition to be noticed no later than October 23, 2023, and held **no later than December 1, 2023**;

   a. In the event an in-person deposition is not sought and the third attempt to depose Plaintiff results in any technological difficulties at commencement or during the proceedings, each party shall allow sufficient time to allow for correctional staff and/or technology staff to remedy any such difficulty;

   b. In the event a video connection cannot be obtained or maintained, the deposition SHALL commence via audio only;

   c. Plaintiff SHALL avoid disruptive, disrespectful or assaultive behavior, and

1                 shall avoid the use of profane language directed at either correctional staff,

2                 technology staff, or defense counsel;

3          d.  Plaintiff is ADVISED that in the event he fails to participate and cooperate

4             during the deposition, such a failure **will** warrant a dismissal of this action; and

5      4.  Defense counsel **SHALL** file a status report **no later than November 1, 2023,**

6        advising the Court of the efforts to reschedule Plaintiff's deposition in accordance

7        with this order.

8

9 IT IS SO ORDERED.

10 Dated:  **October 5, 2023**                */s/ Sheila K. Oberto*

11                                   UNITED STATES MAGISTRATE JUDGE