UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>              Plaintiff,<br><br>     v.<br><br>J. HERNANDEZ,<br><br>              Defendant. | Case No. 1:19-cv-00616 SKO (PC)<br><br>**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>(Docs. 77 & 81) |

Plaintiff is proceeding pro se and *in forma pauperis* in this civil rights case pursuant to 42 U.S.C. section 1983. The action proceeds on Plaintiff's First Amendment claim against Defendant J. Hernandez.

**I.     INTRODUCTION**

Defendant filed a motion for summary judgment on January 30, 2024. (Doc. 77.) Plaintiff filed a motion for summary judgment on February 1, 2024. (Doc. 81.)

On February 15, 2024, Defendant filed an opposition to Plaintiff's motion (Doc. 82), and Plaintiff replied on May 28, 2024 (Doc. 92). Following several extensions of time, Plaintiff filed an opposition to Defendant's motion (Docs. 93, 94) on June 17, 2024, and Defendant filed a reply. (Doc. 95).

For the reasons set forth below, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

## II.  PLAINTIFF'S ALLEGATIONS

On September 4, 2018, Plaintiff alerted Defendant J. Hernandez, a psychiatric technician, to a "rash" or "[f]ungal infection" on his legs. (Doc. 21 at 2-3.) Plaintiff alleges that the rash had "open sores, … some of which were actively [b]leeding and causing him great pain." (*Id.* at 2.) Defendant examined Plaintiff through his cell door, and Plaintiff asked Defendant to escort him to the nurse's station so that Defendant could clean his sores. (*Id.* at 3.) Defendant stated he could not. (*Id.*) Plaintiff, "becoming [f]rustrated with … Defendant's excuses[,] told him that he could clean the wounds himself" and asked Defendant for alcohol pads. (*Id.* at 4.) Defendant replied that he would bring some pads to Plaintiff. (*Id.*) At noon, when Defendant had not returned with the alcohol pads, Plaintiff called out to Defendant as he was passing by, who said he had forgotten about the pads. (*Id.* at 4-5.)

A few minutes later, Defendant gave Plaintiff four alcohol pads. (Doc. 21 at 5.) The pads were "inside their individual packs but … [were] intentionally [punctured] by Defendant, using some … unknown object of circular shape." (*Id.*) Plaintiff explained to Defendant that, due to his Rastafarian faith, he could not use the pads because they were "tainted." (*Id.* at 5-6). Plaintiff asked Defendant to bring him new pads and, if he must open them, that he do so in front of Plaintiff so that Plaintiff could confirm that the pads were not tainted. (*Id.* at 6.) Defendant told Plaintiff that he could not so and after a brief argument, Defendant walked away. (*Id.*)

## III.  LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,* 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### B.  First Amendment: Free Exercise of Religion

Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Inmates "retain protections afforded by the First Amendment, … including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id*. (internal quotation marks & citation omitted); *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (a prisoner's right to free exercise of religion "is necessarily limited by the fact of incarceration").

A plaintiff asserting a free exercise claim must show that the defendant's actions substantially burden his or her practice of religion. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (internal quotation marks & citations omitted). "[A] prison policy that intentionally puts significant pressure on inmates … to abandon their religious beliefs ... imposes a substantial burden on [the inmate's] religious practice." *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008) (internal quotation marks & citation omitted).

Once a plaintiff establishes that state action substantially burdens his exercise of religion, "the government bears the burden of establishing that the regulation serves a compelling government interest and is the least restrictive means of achieving that interest." *Shakur*, 514 F.3d at 889. In the prison context, the Supreme Court has held that alleged infringements of prisoners'

4

free exercise rights are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349 (citation omitted). The challenged conduct "is valid if it is reasonably related to legitimate penological interests." *Id*. (internal quotation marks & citation omitted). "[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (citations omitted).

The Supreme Court has set forth four factors in determining whether a prison regulation is valid: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of exercising the right that remain open to prison inmates;" (3) whether "accommodation of the asserted constitutional right" will "impact ... guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Shakur*, 514 F.3d at 882.

### IV. SUMMARY OF THE PARTIES' MOTIONS

#### A. Defendant's Motion for Summary Judgment

Defendant alleges that the undisputed evidence establishes that he did not substantially burden Plaintiff's ability to practice his religion, and that all four *Turner* factors favor Defendant. Defendant also contends he is entitled to qualified immunity.

#### B. Plaintiff's Motion for Summary Judgment

Plaintiff contends his ability to practice his Rastafarian religion was substantially burdened by Defendant's act and he was coerced to abandon his religious beliefs in exchange for receiving treatment for a medical condition. Plaintiff contends no rule or policy prohibited Defendant from providing him with unopened, versus opened and tainted, alcohol pads.

### V. DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

1. At all times relevant to the allegations, Plaintiff was a prisoner in the California Department of Corrections and Rehabilitation (CDCR) housed at California State Prison-Corcoran (CSP-Corcoran).

    2. On September 4, 2018, Plaintiff alerted Defendant to a "rash" on his legs and requested Defendant provide him with alcohol disinfectant pads.

    3. Per Plaintiff's request, Defendant provided Plaintiff with four alcohol disinfectant pads.

    4. The alcohol pads packets that Defendants provided were pre-opened by Defendant in such a way that prevented the pads from being stored for an extended period without the imbued alcoholic liquid drying out.

    5. Plaintiff demanded that he be provided with unopened alcohol pads, as he claimed it was against his religious [beliefs] to use opened pads as they were tainted.

    6. Defendant refused to give Plaintiff unopened pads due to his fear that Plaintiff could use the unopened [pads for] creation and consumption of illicitly made prison alcoholic drink concoctions commonly known as "Pruno."

    7. Plaintiff claimed that he need alcohol pads to treat the pain stemming from his leg "rash."

    8. Alcohol pads are a disinfectant medical tool which are designed to prevent infection not reduce pain.

(Doc. 77-2.)

### VI. PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS[1]

1. On September 4, 2018, Plaintiff was a prisoner in the custody of CDCR, housed at CSP-Corcoran.

2. On September 4, 2018, Plaintiff was a practicing Rastafarian by religious faith and believe with the Oxford New Desktop Dictionary and other recognizing Rastafarian as a religion.

3. On that same date, Plaintiff held the right to practice his religion freely.

4. On September 4, 2018, Plaintiff was suffering from a rash or other ailment to his legs and contacted Defendant about the ailment while Defendant was passing out morning

---

[1] The Court has modified Plaintiff's statements to exclude unnecessary dates, add necessary punctuation, and clarify sentence language.

1 medications.

2 5. On that occasion, Plaintiff requested that Defendant provide Plaintiff with alcohol
3 pads to treat the ailment to his legs. Defendant informed Plaintiff he did not have
4 alcohol pads on the medical cart at that time but would provide the pads to Plaintiff
5 later that day.

6 6. Defendant was accompanied by Correctional Officer D. Hannameyer.

7 7. During the noon medication pass on September 4, 2018, Defendant, again
8 accompanied by Hannameyer, contacted Plaintiff about his request for alcohol pads.

9 8. The alcohol pads Defendant sought to provide Plaintiff were punctured through their
10 center with an unknown object.

11 9. Plaintiff advised Defendant he could not use the punctured alcohol pads because they
12 were open, and Plaintiff is a Rastafarian. Plaintiff told Defendant that if Defendant
13 needed to open the alcohol pads in order to provide them to Plaintiff, Defendant
14 needed to bring unopened alcohol pads and open them in front of Plaintiff. Defendant
15 told Plaintiff that he could not open them in front of Plaintiff and left Plaintiff to
16 suffer.

17 10. There was no rule and/or regulation that precluded Defendant from opening the
18 alcohol pads in front of Plaintiff in order to allow Plaintiff to freely practice his
19 religion, where in the Rasta faith a practicing Rastafarian is to seek to abstain from
20 coming into contact with impure objects such as alcohol pads that have been
21 punctured via a foreign object.

22 11. There was no reason in penal interest that justifies Defendant denying Plaintiff
23 unopened alcohol pads, and or opening the alcohol pads in front of Plaintiff where
24 Defendant tried to provide Plaintiff with punctured alcohol pads, and no rule
25 preventing Defendant providing those, for even being punctured, the alcohol pads still
26 contained alcohol in them.

27 12. Defendant knew that Plaintiff had a right to freely practice his religion and still
28 knowingly prevented Plaintiff from doing so via taking the additional coercive action

7

of seeking to compel Plaintiff to deviate from adhering to said religion "in a 'take these tainted alcohol pads to sooth your pain or leave them and suffer' stance."

(Doc. 81 at 5-9.)

## VII. DISCUSSION[2]

For purposes of the cross motions for summary judgment, the Court finds the following to facts to be undisputed:

1. At all times relevant to this action, Plaintiff was in the custody of the CDCR and incarcerated at CSP-Corcoran.
2. Plaintiff is a practitioner of the Rastafarian faith.
3. On September 4, 2018, Plaintiff advised Defendant that he was suffering from a rash or sores on his legs and requested that Defendant provide him with alcohol pads.
4. Later that same day, Defendant sought to provide Plaintiff with four alcohol disinfectant pads in response to Plaintiff's request.
5. Defendant pre-opened the alcohol pads in a manner that prohibits extended storage of the liquid alcohol enclosed in the packet.
6. Plaintiff advised Defendant he could not use the alcohol pads because they were opened and thus tainted, referencing his Rastafarian faith.
7. Plaintiff asked Defendant to provide him with unopened alcohol pads.
8. Defendant feared Plaintiff could use unopened alcohol pads to make and consume "Pruno."
9. Alcohol pads are a disinfectant medical tool designed to prevent infection.
10. Plaintiff was not prescribed nor directed to use alcohol pads by any medical professional, staff member, or other individual at KVSP.
11. Plaintiff's "leg rash" was the result of post inflammatory hyperpigmentation, for which his physicians and medical team believed nothing could be done.
12. Plaintiff had the same "rash" prior to his transfer to CSP-Corcoran and prior to any

---

[2] In arriving at these determinations, the Court has reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses, if any, objections, and other papers filed by the parties.

interactions with Defendant.

13. Plaintiff and Defendant have had no similar or negative interactions prior to or following the events September 4, 2018.

14. The illicit creation and consumption of alcohol in prisons, commonly called "Pruno" by CDCR inmates is an ongoing problem for which the government has a compelling interest in combating.

15. Plaintiff has made and consumed Pruno on a number of previous occasions and prior to 2016 consumed it on a daily basis and attempted to conceal or destroy it when discovered.

16. Alcohol-based disinfectant pads contain a highly concentrated form of alcohol called "isopropyl."

17. Ingesting isopropyl alcohol can be extremely harmful to the human body.

18. The isopropyl alcohol imbued on a disinfectant pad can be consumed as an intoxicant.

19. It is illegal for an inmate to create or ingest alcohol.

20. Defendant and CDCR have a valid governmental and penological interest in preventing inmates from illegally creating or consuming alcohol.

21. Pre-opening an alcohol-based disinfectant pad packet will cause the imbued alcohol to dry out within hours thereby preventing storage for later use.

*Analysis*

Plaintiff's Religious Beliefs Were Not Substantially Burdened

The Court must determine whether Plaintiff's religious beliefs were substantially burdened by Defendant's conduct on September 4, 2018. *Jones,* 791 F.3d at 1031. A substantial burden is one that "'place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id*. (citations omitted).

Here, the undisputed material facts indicate that Plaintiff was suffering from a rash on his legs on September 4, 2018, and asked Defendant Hernandez, a psychiatric technician, to provide him with alcohol pads. When Defendant provided Plaintiff with four alcohol pad packets that had

been opened, Plaintiff told Defendant he could not use the pads because they had been opened and were tainted.

Plaintiff contends that when Defendant informed Plaintiff that he could not provide Plaintiff with unopened alcohol pads, Plaintiff stated he needed to bring unopened alcohol pads and open them in front of Plaintiff in accordance with his religious beliefs. Plaintiff states that Defendant told Plaintiff he could not open the alcohol pads in front of Plaintiff and "left Plaintiff to suffer."

Defendant Hernandez's sworn declaration states: "I do not recall an inmate ever asking me to open an alcohol pad in their presence; however, if requested to do so, I would likely comply." (Doc. 77-3 at 2, ¶ 8.) Even assuming Defendant refused to open the alcohol pads in Plaintiff's presence after Plaintiff expressed his concern, Plaintiff cannot establish his free exercise of religion was substantially burdened by Defendant's conduct.

The Ninth Circuit Court of Appeals has found that brief, short term, or sporadic incidents do not constitute a substantial burden on the free exercise of religion. *Jones*, 791 F.3d at 1032-33 ("'A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their beliefs or exert substantial pressure on an adherent to modify his behavior and violate his beliefs'" [citations omitted]).

In *Canell*, the Ninth Circuit affirmed summary judgment for defendants on First Amendment free exercise claims because "Canell's only allegation is that on some occasions Lightner interfered with his prayer activities by preaching about Christian gospel. While Lightner's evangelizing may have constituted an intrusion upon Canell's prayers on some occasions during the brief period involved, we agree with the district court's conclusion that these intrusions were 'relatively short-term and sporadic' and did not constitute a substantial interference." *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998). *See also Brown v. Washington*, 752 Fed. App'x 402, 405 (9th Cir. Oct. 15, 2018) (a "one-time set of circumstances amounting to no more than an unintentional interference" with Plaintiff's ability to exercise his religious beliefs is "not enough to constitute a substantial burden" [citation omitted]); *Saif'ullah v. Cruzen*, 735 F. App'x 415, 416 (9th Cir. Aug. 22, 2018) (interruption of congregational prayer

"failed to raise a genuine issue of material facts as to whether defendants' conduct constituted a substantial burden"); *Howard v. Skolnik*, 372 F. App'x 781, 782 (9th Cir. Mar. 30, 2010) (two incidents of interference with prisoner's fasting did not constitute substantial burden on exercise of religion); *see also Austin v. Brown*, No. 20-56028, 2022 WL 1537366, at *1 (9th Cir. May 16, 2022) (Memo) ("mere fact that Buddhist chapel services were canceled for a number of weeks does not amount to a per se substantial burden, nor does that alone create a genuine dispute of material fact"); *Chaparro v. Ducart*, No. C 14-4955 LHK (PR), 2016 WL 491635, at *5 (N.D. Cal. Feb. 9, 2016), aff'd, 695 F. App'x 254 (9th Cir. 2017) (causing plaintiff to miss four chapel services did not impose "substantial burden"); *Davis v. John*, 485 F. Supp. 3d 1207, 1221(C.D. Cal. 2020) ("According to the Ninth Circuit's free exercise jurisprudence, the past alleged deprivation of the [Nation of Islam] symbol's display on only two occasions is insufficient to have constituted a 'substantial burden' on Plaintiff's ability to practice his religion"); *Gonzales v. Koranda*, No. 2:22-cv-1345 KJM CSK P, 2024 WL 3861988, at * (E.D. Cal. Aug. 19, 2024) (a single incident involving statements made to plaintiff by defendant during an interview concerning an evaluation of parole suitability did not substantially burden plaintiff's practice of his religion).

Here, Plaintiff alleges Defendant refused to provide him with unopened alcohol disinfectant pads on a single occasion. Therefore, any interference was a short term inconvenience. *Jones*, 791 F.3d at 1032-33; *Canell*, 143 F.3d at 1215. Other than not being given unopened alcohol pads on September 4, 2018, there are no facts indicating Plaintiff was coerced into acting contrary to his Rastafarian beliefs. Nor are there facts establishing Defendant exerted substantial pressure on Plaintiff to modify his behavior and to violate his religious beliefs.

Plaintiff testified at his deposition that he could not use the topical creams prescribed by physicians because they contained chemicals. (Hammler Depo., at 42-43, 46.) Plaintiff testified he believes alcohol pads are the purest form of treatment because alcohol kills disease. (*Id.*) Asked whether his beliefs prohibited him from accepting the opened alcohol pads offered by Defendant, Plaintiff stated that "those alcohol pads would have caused [him] to subject [himself] and the Holy Spirit to something that was unclean." (*Id.* at 74.) He stated he had "no choice but to

reject the pads because they were tainted." (*Id*. at 88.) Plaintiff also stated that no physician told him to treat his rash with alcohol pads; it was his own belief that the alcohol pads could medically protect him because he was not provided usable topical creams. (*Id*. at 104.)

Denying Plaintiff unopened alcohol pads on a single occasion does not equate to Defendant exerting substantial pressure on Plaintiff to modify his behavior and to violate his religious beliefs. Plaintiff did not accept or use the opened alcohol pads, and the Court is not persuaded that Plaintiff's lack of choice on a single occasion amounted to substantial pressure on him to modify his behavior and to violate his religious beliefs. *Shakur*, 514 F.3d at 889.

This Court finds Plaintiff failed to meet his burden of establishing his right to the free exercise of his religion was substantially burdened by Defendant Hernandez's one time refusal to provide Plaintiff with untainted (unopened and/or opened before Plaintiff) alcohol pads. *Celotex*, 477 U.S. at 322; *Jones*, 791 F.3d at 1031. Simply put, no reasonable jury would return a verdict in Plaintiff's favor. *Matsushita*, 475 U.S. at 587; *Wool*, 818 F.2d at 1436. Therefore, Defendant is entitled to summary judgment.

### The *Turner* Factors

Because the Court finds Plaintiff's free exercise right was not substantially burdened, it foregoes an analysis of the *Turner* factors. *Shakur*, 514 F.3d at 889 ("Once the plaintiff establishes that the challenged state action substantially burdens his religious exercise, the government bears the burden of establishing that the regulation serves a compelling government interest and is the least restrictive means of achieving that interest"); *see also Gonzales*, 2024 WL 3861988, at * 11 ("because plaintiff has not established that Koranda's one-time interview statements substantially burdened plaintiff's religious exercise, the Court does not address the *Turner* [] factors, which determine whether a prison regulation or policy is reasonably related to legitimate penological interests").

### Qualified Immunity

Defendant also contends he is entitled to qualified immunity. Because the Court has found no genuine issue of material fact in dispute regarding the alleged violation of Plaintiff's constitutional rights, the Court need not reach the issue. *See County of Sacramento v. Lewis*, 523

U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all").

<u>Screening Standards Versus Summary Judgment Standards</u>

To the extent Plaintiff contends his claim must survive summary judgment because it survived screening, he is mistaken. The standards for screening a complaint are not equivalent to the standards applicable to a summary judgment motion. At screening, the Court tests the plausibility of the asserted claim and assumes the allegations to be true. On summary judgment, the Court is tasked with determining whether a plaintiff can prove his claim. *See, e.g.*, *Porter v. Rivas*, No. 1:23-cv-00105-ADA-CDB (PC), 2023 WL 4765492, at *1 (E.D. Cal. July 26, 2023) ("at screening, the Court is tasked with determining whether a plaintiff has sufficiently and plausibly alleged a cause of action or claim entitling the plaintiff to relief. The merits of the allegations are not tested, for the Court is to consider factual allegations to be true for purposes of screening"); *Gates v. LeGrand*, No. 3:16-cv-00321-MMD-CBC, 2019 WL 1168527, at *4, n.1 (D. Nev. Mar. 12, 2019) ("different standards apply screening than the standards that apply at summary judgment"); *see also Morales v. Rauch*, No. 18-CV-1967, 2020 WL 6129342, at *1 (E.D. Wis. Sept. 24, 2020) ("The standards at screening and summary judgment are different"); *Bishawi v. Northeast Ohio Correctional Center (NEOCC)*, No. 4:12-cv-3106, 2017 WL 1029105, at *2 (N.D. Ohio Mar. 17, 2017) ("Given the difference in reviewing standards, a pleading that might survive a screening determination cannot defeat a properly supported summary judgment motion").

In sum, Plaintiff fails to make the required showing that Defendant's conduct—refusing to provide Plaintiff with unopened alcohol pads or opening the alcohol pad packages in Plaintiff's presence on a single occasion—substantially burdened Plaintiff's practice of his Rastafarian faith. As a result, Defendant is entitled to summary judgment.

**VIII.   CONCLUSION AND ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment (Doc. 77) is **GRANTED**;

2. Plaintiff's motion for summary judgment (Doc. 81) is **DENIED**; and

3. The Clerk of the Court is directed to enter judgment in Defendant's favor and to close this case.

IT IS SO ORDERED.

Dated:  **September 10, 2024**                  /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE